UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT DEREK LURCH, JR.,

                            Plaintiff,

            -against-

NYSDOCCS, et al.,

                            Defendants.

20-CV-3430 (LLS)

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

        Plaintiff, currently incarcerated in the Vernon C. Bain Center, brings this *pro se* action

under 42 U.S.C. § 1983, alleging that Defendants violated his rights by arresting him. By order

dated May 15, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees,

that is, *in forma pauperis* (IFP).[1] For the reasons set forth below, the Court grants Plaintiff leave

to file an amended complaint within sixty days of the date of this order.

                            **STANDARD OF REVIEW**

        The Prison Litigation Reform Act requires that federal courts screen complaints brought

by prisoners who seek relief against a governmental entity or an officer or employee of a

governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP

complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim

upon which relief may be granted, or seeks monetary relief from a defendant who is immune

from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639

(2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter

jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

---

        [1] Prisoners are not exempt from paying the full filing fee even when they have been
granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff brings this action against the New York State Department of Corrections and Community Supervision (DOCCS); Alexandra Poolt, a social worker employed by the Center for

Employment Opportunities (CEO);[2] Parole Officer (PO) Ortiz, Plaintiff's parole officer; Supervising Parole Officer (SPO) D. Escano; the supervising parole officer responsible for Plaintiff's arrest on December 5, 2019; and unknown NYPD officers. Plaintiff brings claims in connection with arrests that occurred on November 25, 2019, and March 17, 2020, and the lodging of parole violation charges.

The following allegations are from the complaint. On November 25, 2019, Plaintiff went to CEO's office located at 50 Broadway in lower Manhattan. While he was there, Poolt called 911 and stated that Plaintiff had "allegedly threatened to kill [his] potential baby mother and newborn son during a job workshop session," and he was arrested by NYPD officers under New York Mental Hygiene Law (MHL) § 9.41. (ECF No. 2, at 6.) Plaintiff had not discussed "personal conflicts" with Poolt and had "only expressed [his] dissatisfaction" with her efforts to help him "secure steady housing." (*Id*. at 12.)

After arresting Plaintiff, the NYPD officers assaulted him and then transported him to Bellevue Hospital for a mental health evaluation. At the hospital, after Plaintiff explained to the admitting psychiatric doctor that he would never make such a statement and was "actually begging [his] potential baby mother to be in the child's life, if it [was] his," the doctor discharged Plaintiff. (*Id*.) Before discharging Plaintiff, the doctor asked him why he had resisted arrest, and Plaintiff responded that he knew that the arrest did not comply with MHL § 9.41 and was unlawful. Plaintiff then asked if he could receive medical treatment for the injuries he sustained during the assault, but the doctor stated that he was not a medical doctor.

---

[2] CEO provides employment services to people with recent criminal convictions across the United States. *See* https://ceoworks.org/who-we-serve (last visited June 5, 2020).

The following day, November 26, 2019, Ortiz contacted Plaintiff to inform him that she had been notified that he had "police contact," and she wanted to know if he had been criminally charged. (*Id.*) Several days later, Ortiz's supervising parole officer issued a warrant for Plaintiff's arrest, and on December 5, 2019, he was taken into custody. Poolt's false assertions led to the termination of his employment and his confinement for 84 days due to "this alleged threat."[3] (*Id.* at 7.) He was finally released from custody two weeks after a decision was issued.

Poolt defamed Plaintiff by implying that he would harm innocent children, and, acting in concert with the DOCCS, violated his Fourth Amendment rights by falsely notifying parole officials that he was a threat to public safety because he allegedly threatened to shoot someone.[4] Further, DOCCS and parole officials should not have relied on Poolt's false assertions because they were vague and "unworthy of belief as a matter of law," and "anyone who found these allegations credible only did so because they needed a reason to use to justify taking [him] into custody or to arrest [him]." (*Id.* at 10.) Ortiz violated her" affirmative duty" to intervene on his behalf by allowing her supervising parole officer to arrest him without probable cause and failing to advocate that the warrant for his arrest be lifted because of Poolt's vague allegations. (*Id.* at 11.) Plaintiff did not waive his rights to be seized without probable cause when he agreed to the conditions of his post-release supervision.

---

[3] There is a discrepancy in Plaintiff's assertions concerning his length of confinement from the December 5, 2019 arrest. He asserts on one page of the complaint that he was confined for 82 days and on another that he was confined for 84 days. (ECF No. 2, at 7, 12.)

[4] Plaintiff provides conflicting information on the identity of the person Poolt reported he threatened. He first asserts that on November 25, 2019, Poolt reported to 911 that he allegedly threatened his potential "baby mother" during a workshop at CEO. (*See* ECF No. 2, at 6.) But Plaintiff also claims that on the same date, Poolt informed parole officials that he had threatened a person, who resided at a vacant address in Brooklyn, New York, and whose age, race, and gender were not identified. (*See id.* at 10-11.)

On March 17, 2020, Plaintiff was again arrested by NYPD officers for felony assault with a deadly instrument. He was accused of striking someone with a can of beans, breaking the victim's nose and causing a laceration that bled profusely. The arrest was without probable because there was no video footage to corroborate the victim's and witnesses' accounts of the incident, and the can – which should serve as evidence – was never vouchered. After Plaintiff was taken into custody, he informed the NYPD that he was defending himself from an assault, but that the officers disregarded his complaint entirely and only arrested him and not his assailant. Further, because of Plaintiff's parole status, he is being held indefinitely and cannot be released from custody even if he makes bail until parole officials make a decision.

Plaintiff brings this action seeking monetary damages.

## DISCUSSION

### A.   Claims Stemming from November 25, 2019 Arrest

Plaintiff has previously submitted to this Court a complaint against the City of New York, unknown EMS workers, unknown NYPD officers, and unknown ESU officers concerning his November 25, 2019 arrest. That case is pending before Judge Valerie Caproni of this Court under docket number 19-CV-11254. Plaintiff asserts essentially the same claims about the arrest in this complaint – that NYPD officers arrested him without probable cause based on Poolt's false assertions, the officers assaulted him, and then transported him to Bellevue Hospital for a mental health evaluation. Because no useful purpose would be served by the litigation of these duplicate claims, Plaintiff's claims against Poolt and the unidentified NYPD officers in connection with the November 25, 2019 arrest are dismissed without prejudice to Plaintiff's pending case under docket number 19-CV-11254 (VEC). Should Plaintiff wish to add new defendants, information, or claims concerning his November 25, 2019 arrest, he may seek to amend the complaint in the pending case in compliance with Rule 15 of the Federal Rules of Civil Procedure.

B.      **Other False-Arrest Claims**

Plaintiff asserts that Defendants falsely arrested and imprisoned him on three other

occasions. His false-arrest and false-imprisonment claims are addressed together as they are, for

purposes of his allegations, the same. *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991).[5] For

the elements of a § 1983 false-arrest claim, the Court first looks to state law. *See Manuel v. City*

*of Joliet, Ill.*, 137 S. Ct. 911, 925 (2017) ("[T]o flesh out the elements of this constitutional tort,

we must look for 'tort analogies.'"); *see also Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d

Cir. 2018) (holding that common law principles are meant simply to guide rather than to control

the definition of § 1983 claims and courts should not "mechanically apply" the law of New York

State).

To establish a false-arrest claim under New York law, a plaintiff must show that: "(1) the

defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise

privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it

is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The

existence of probable cause to arrest constitutes justification and is a complete defense to an

action for false arrest.") (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)) (internal

quotation marks omitted). Officers have probable cause to arrest when they "have knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that the person to be arrested has committed or is

---

[5] "False arrest is simply an unlawful detention or confinement brought about by means of
an arrest rather than in some other way and is in all other respects synonymous with false
imprisonment." *Evans v. City of New York*, 308 F. Supp. 2d 316, 329 n.8 (S.D.N.Y. 2004)
(quoting *Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir. 1999) (Glasser, J.,
dissenting)).

committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)

(emphasis and citation omitted)."Probable cause can exist even where it is based on mistaken

information, so long as the arresting officer acted reasonably and in good faith in relying on that

information." *Bernard v. United States*, 25 F.3d 98, 102 (1994); *Curley v. Vill. of Suffern*, 268

F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate

every theoretically plausible claim of innocence before making an arrest.").

    In addition, because a parolee is "subject to restrictions not applicable to other citizens,"

and "enjoys only conditional liberty properly dependent on observance of special parole

restrictions," *Trisvan v. Annucci*, No. 14-CV-6016, 2016 WL 7335609, at *3 (E.D.N.Y. Dec. 16,

2016) (citations and internal quotation marks omitted), when a parolee is involved, "the lower

'reasonable cause' standard" is applied to his arrest and confinement, *Gathers v. White*, No. 04-

CV-5454, 2007 WL 446755, at *4 (E.D.N.Y. Feb. 8, 2007), *aff'd sub nom. Gathers v. Burdick*,

308 F. App'x 525 (2d Cir. 2009) (summary order); *see Alvarado v. City of New York*, 482 F.

Supp. 2d 332, 337 (S.D.N.Y. 2007). Under New York's parole regulations, if a parole officer

have reasonable cause to believe that a parolee has committed a crime or violated the conditions

of his parole, a warrant may be issued for the parolee temporary detention. N.Y. Comp. Codes R.

& Regs. (N.Y.C.R.R.) tit. 9 § 8004.2(c).[6] A parolee's arrest and confinement based on a parole

warrant supported by reasonable cause is privileged even if the parole warrant is later declared

---

[6] 9 N.Y.C.R.R. § 8004.2(c) provides that:

A warrant for retaking and temporary detention may issue when there is a
reasonable cause to believe that the releasee has lapsed into criminal ways or
company, or has violated the conditions of his release in an important respect.
Reasonable cause exists when evidence or information which appears reliable
discloses facts or circumstances that would convince a person of ordinary
intelligence, judgment and experience that it is reasonably likely that a release has
committed the acts in question or has lapsed into criminal ways or company.

invalid. *See Albergottie v. New York City*, ECF 1:08-CV-8331, 42, 2011 WL 519296, at *8 (S.D.N.Y. Feb. 15, 2011); *see generally Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007) (holding that an arrest pursuant to a warrant is presumed to be reasonable under the Fourth Amendment).

### 1.    Plaintiff's March 17, 2020 Arrest by NYPD

Plaintiff has not pleaded facts indicating that the NYPD arrested him without probable cause for felony assault on March 17, 2020. His assertions suggest that "the facts known by the arresting officer[s] at the time of the arrest objectively provided probable cause to arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Plaintiff was accused of throwing a can and injuring a person and was arrested for felony assault. He asserts that he was defending himself and contends that the police improperly relied on the victim's and eyewitnesses' statements to arrest him. But Plaintiff's allegations indicate that the facts and circumstances were sufficient to warrant a person of reasonable caution to believe that he had committed a crime and that the police had probable cause to arrest him. *See Ricciuiti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The Court therefore grants Plaintiff leave to file an amended complaint.

If Plaintiff files an amended complaint, he should allege any additional facts suggesting that the NYPD officers lacked probable cause to arrest him for felony assault. Plaintiff must

describe the circumstances of his arrest and state what the victim, the eyewitnesses, and the police officers did or said. He should also provide the status of his criminal proceedings for the felony assault charge and name as defendants the individuals who were directly and personally involved in the alleged violation.

### 2.    Plaintiff's Arrests and Confinement on Parole Violation Charges

Plaintiff also asserts false-arrest claims based on the issuance of parole violation warrants after his arrests by the NYPD in November 2019, and March 2020. But Plaintiff fails to allege facts suggesting that his arrests and confinement pursuant to the parole warrants were not privileged.

Plaintiff asserts that shortly after his arrest on November 25, 2019, PO Ortiz's supervising parole officer issued a warrant for his arrest after receiving information that Plaintiff had been arrested by the police at CEO for allegedly threatening to harm someone. Plaintiff contends that the information was not credible and that parole officials should have investigated the matter further before issuing a parole warrant. But his arrest by the NYPD was a sufficient basis for parole officials to have reasonable cause to believe he had committed a crime or violated the terms of his parole. *See Albergottie*, 2011 WL 519296, at *8 (a parolee's arrest for forgery "is more than sufficient to establish reasonable cause for a parole warrant"). As Plaintiff does not allege any fact suggesting that the parole warrant was facially invalid, he fails to state claims for relief based on his December 5, 2019 arrest pursuant to the parole warrant and subsequent confinement.[7] *See id.*, 2011 WL 519296, at *8; *see also Santiago v. Fischer*, No. 09-

---

[7] Generally after issuance of a parole violation warrant, a parolee's parole revocation proceedings begin with a preliminary hearing, and if the parolee is found to be delinquent, a final hearing will be scheduled not more than ninety days after the preliminary hearing took place. 9 N.Y.C.R.R. § 8005.17(a).

CV-1383, 2009 WL 3852001, at *7 (E.D.N.Y. Nov. 18, 2009) ("Furthermore, [a]n arrest based on a facially valid warrant, which results in an unlawful detention, does not give rise to an action for false arrest even though the warrant was erroneously or improperly issued." (quotation and citation omitted)).

Plaintiff also asserts that parole officials violated his rights by issuing a parole warrant after his March 17, 2020 arrest by the NYPD on the felony assault charge. But Plaintiff again does not allege any facts suggesting that parole officials did not have reasonable cause to issue the warrant or that the warrant is facially invalid. As New York regulations allow the issuance of a parole warrant when there is reasonable cause to believe that a parolee has committed a crime or violated the terms of his parole, the issuance of the parole warrant after Plaintiff's arrest for felony assault appears reasonable.

Plaintiff is granted leave to provide additional facts in his amended complaint concerning the parole violation warrants, charges, and relating proceedings. Plaintiff must provide detailed facts about his parole proceedings after each arrest, including information about any preliminary or final revocation proceedings. Plaintiff indicates that at the time he filed this action, any

---

Whether parole officials had reasonable cause to believe that Plaintiff violated his parole conditions would have been an issue in any preliminary parole revocation proceeding following Plaintiff's arrest. Any probable cause determinations made at a preliminary revocation hearing would have a preclusive effect on any false-arrest claims. *See Ariola v. LaClair*, No. 08-CV-116, 2014 WL 4966748, at *19 (N.D.N.Y. Sept. 30, 2014) ("[A]bsent any allegation contesting the validity of the arrest warrant, this Court may presume that probable cause exists, as was found at the conclusion of the preliminary parole revocation hearing, and therefore would act as a bar against any claim for false arrest."); *Erwin v. Russi*, No. 97-CV-5818, 1998 WL 474096, at *5 (S.D.N.Y. Aug. 11, 1998) ("New York courts have consistently held that a civil rights claim rooted in the absence of probable cause is barred by the collateral estoppel doctrine where there was a prior judicial determination that probable cause existed.") (collecting cases). But here, Plaintiff does not allege any facts concerning any parole revocation proceedings that occurred after he was arrested on December 5, 2019, only asserting that he was confined for 82 or 84 days before he was released from custody.

proceedings relating to the December 5, 2019 parole warrant had concluded. He must therefore describe the results of this parole proceedings, including whether he was found to have violated his parole or whether the charges against him were dismissed. With respect to the pending parole violation warrant stemming from his March 17, 2020 arrest, Plaintiff must state the status of his pending criminal case and any parole revocation proceedings.

## C.      Deprivation of Right to Bail

Plaintiff also challenges the parole warrant that was issued after his March 17, 2020 arrest on the basis that it requires his mandatory detention even if he is granted bail on the underlying felony arrest charge.[8] Although the constitutionality of the mandatory detention of a parolee based on a parole violation warrant appears to be an open issue in this Circuit, *Bergamaschi v. Cuomo*, ECF 1:20 Civ. 2817, 33, 2020 WL 1910754, at *11 (S.D.N.Y. Apr. 20, 2020), Plaintiff's claim is speculative and premature at this juncture. As he is presently in custody for the felony assault charge and he does not assert any facts suggesting that he has been granted bail, the issuance of the parole violation warrant did not deprive him of his right to bail. Should Plaintiff be granted bail on the felony assault charge and he is then subject to mandatory detention solely based on the parole warrant, he may then seek relief for his continuing custody on that basis.[9]

---

[8] The Parole Board's regulations mandate the detention of a parolee once there is probable cause to find that he has violated one or more of the conditions of parole "in an important respect." 9 N.Y.C.R.R. § 8005.7(a)(5).

[9] A plaintiff may not seek release from state custody in a § 1983 action; instead, he can only obtain such relief in federal court by bringing a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 after exhausting his state remedies. *See Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)) (noting that writ of *habeas corpus* is sole remedy for prisoner seeking to challenge the fact or duration of his confinement). A state prisoner may not circumvent the exhaustion requirement for *habeas corpus* relief by requesting release from custody in a civil action. *Preiser*, 411 U.S. at 489-90.

**D.     Defendants' Liability**

**1.     Claims against DOCCS**

Plaintiff's claims against the DOCCS must be dismissed. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's § 1983 claims against DOCCS are therefore barred by the Eleventh Amendment and are dismissed.

**2.     Claims against Police Officers**

Plaintiff seeks to bring claims against NYPD officers arising out of his March 17, 2020 arrest. As discussed above, he asserts that several officers falsely arrested him, but he does not state what each officer did or failed to do that violated his rights. To state a claim under § 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). As provided above, Plaintiff must amend his false-arrest claim stemming from his March 17, 2020 arrest, identify the officers involved, and state how each officer violated his rights. If Plaintiff does not know the

name of an officer, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[10]

### 3. Claims against Parole Officers

Plaintiff also brings claims against PO Ortiz, SPO Escano, and the supervising parole officer responsible for his arrest on December 5, 2019. Generally, state officials, such as parole officers, have absolute immunity for "judicial acts" and "acts that are prosecutorial in nature," but only enjoy qualified immunity for acts that are not "integrally related to the judicial process," because they are administrative or investigatory in nature. *Scotto v. Almenas*, 143 F.3d 105, 110-113 (2d Cir. 1998). "Parole officers . . . receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature." *Id.* at 112. But they receive only qualified immunity for preparing violation reports and recommending an arrest warrant. *Id.*

Here, Plaintiff brings claims against Escano and the other supervising parole officer for their discretionary decisions to bring parole violation charges against him. But these defendant's discretionary decisions to authorize the issuance of parole warrants against Plaintiff were prosecutorial in nature, and entitles them to absolute immunity.

Plaintiff also brings claims against Ortiz for her role in his arrests on parole violation charges. He does not clearly specify what she did, asserting that she violated her affirmative duty to intervene on his behalf by allowing her supervising parole officer to arrest him without probable cause and failing to advocate that the warrant for his arrest be lifted because of Poolt's vague allegations. If Plaintiff is seeking to sue Ortiz for recommending to her supervisors that

---

[10] For example, a defendant may be identified as: "Police Officer John Doe #1 on duty August 31, 2010, at NYPD 23 Precinct, during the 7-3 p.m. shift."

parole violation warrants be issued because of Plaintiff's November 2019 arrest based on Poolt's assertions and his March 2020 arrest on felony assault charges, no absolute immunity attach to her actions because they were administrative rather than judicial or prosecutorial.[11] *See id*. at 111–13. Because Plaintiff does not specifically allege what Ortiz did, the Court cannot say at this stage that he cannot pursue a claim against her with respect to his December 2019 and March 2020 parole warrants. If Plaintiff chooses to amend his complaint, he must specifically allege how Ortiz violated his rights.

### 4.   Claims against Poolt Stemming from November 2019 Arrest for Parole Violation

Plaintiff also brings claims against Poolt for allegedly falsely notifying parole officials that he had threatened to shoot someone.[12] To state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).The "under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citations omitted). Generally, a private party who does not work for any state or other government body, would not be subject to liability

---

[11] Under New York law, a parole officer does not have the discretionary authority to initiate parole revocation proceedings – rather, "if a parole officer believes that a parolee under his supervision has violated a condition of his parole, 'such parole officer shall report such fact to a member of the board or a designated officer.'" *Scotto*, 143 F.3d at 112 (quoting 9 N.Y.C.R.R. § 8004.2(a)).

[12] The Court notes that Plaintiff asserts that Poolt both called 911 – leading to his arrest by the NYPD on November 25, 2019 – and contacted parole officials – resulting in the issuance of the December 5, 2019 parole warrant. The Court addresses only Plaintiff's claim that Poolt contacted parole officials. As discussed above, any claims concerning Poolt's 911 call should be brought in the pending action before Judge Caproni under docket number 19-CV-11254.

under § 1983. *See Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

Here, Plaintiff identifies Poolt as a social worker employed by CEO, a private entity. Thus, it appears that Poolt is a private party who does not work for any state or other government body. Because Poolt is a private actor and Plaintiff does not allege any facts suggesting that she was "a willful participant in joint activity with the State or its agents," *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (citation and internal quotation marks omitted), she is not subject to liability under § 1983.

But even if Poolt were deemed a state actor, she cannot be held liable on a false-arrest claim merely for seeking assistance or providing information to the police or other officials. "To hold a defendant liable as one who affirmatively instigated or procured an arrest, a plaintiff must show that the defendant or its employees did more than merely provide information. . . ." *King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997); *see also Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) ("The mere reporting of a crime and giving testimony are insufficient [to initiate prosecution]; it must be shown that [the] defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.") (citations omitted). As Plaintiff does not allege any facts suggesting that Poolt did more than merely report information to parole officials, he fails to state a claim for relief against her.

## LEAVE TO AMEND

The Court dismisses Plaintiff's claims against DOCCS, Poolt, SPO Escano, and the other supervising parole officer. The Court also dismisses Plaintiff's claims against Poolt and the unidentified NYPD officers in connection with the November 25, 2019 arrest without prejudice to Plaintiff's pending case under docket number 19-CV-11254 (VEC). The Court further dismisses Plaintiff's claim that he was deprived of his right to bail.

Plaintiff is granted leave to amend his complaint to detail his false-arrest and detention claims as described above. In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

    a)  give the names and titles of all relevant persons;

    b)  describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

    c)  give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

    d)  give the location where each relevant event occurred;

    e)  describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

    f)  state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

## CONCLUSION

The Court dismisses Plaintiff's claims against DOCCS, Poolt, SPO Escano, and the other supervising parole officer. The Court also dismisses Plaintiff's claims against Poolt and the unidentified NYPD officers in connection with the November 25, 2019 arrest without prejudice to Plaintiff's pending case under docket number 19-CV-11254 (VEC).

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 20-CV-3430 (LLS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

This order will be mailed in chambers.

SO ORDERED.

Dated:    June 12, 2020
          New York, New York

                                        _Louis L. Stanton_
                                          Louis L. Stanton
                                             U.S.D.J.

17